**Earl V. REESE, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 89–1951.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1990.

Decided June 21, 1990.

John A. Winters, Crookston, Minn., for petitioner.

Marguerite P. Dadabo, Chicago, Ill., for respondent.

Before LAY, Chief Judge, BEAM, Circuit Judge, and WOODS,* District Judge.

BEAM, Circuit Judge.

Earl V. Reese petitions under 45 U.S.C. § 355(f) (Supp. V 1987) for judicial review

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

of the Railroad Retirement Board's (the Board) final decision. Reese received a $5,481.30 overpayment of a disability annuity. He requested a waiver of recovery of the overpayment and the accompanying penalty imposed by the Bureau of Hearings and Appeals of the Board. The Board affirmed and adopted an appeal referee's decision, which denied the waiver of recovery of the overpayment under section 10(c) of the Railroad Retirement Act, 45 U.S.C. § 231i(c) (1982), and which assessed a penalty of $9,633.55 under section 2(e)(4) of the Act, 45 U.S.C. § 231a(e)(4) (Supp. V 1987). We affirm.

## I. BACKGROUND

Reese was born in February of 1922, and educated through the fifth grade. *See* Admin. Record at 90, 155. Reese has difficulty reading and does not read anything on a regular basis. *Id.* at 156. When he was eighteen, Reese accepted a job with the railroad. Prior to his retirement, Reese worked as a section laborer in the track department. *Id.* at 136, 156. He injured his back while working on the railroad, and suffered numerous medical problems including back pain, angina, and peptic ulcer symptoms. *Id.* at 136.

In 1965, Reese first applied for a disability annuity under the Railroad Retirement Act, but the annuity was denied because he returned to work as a bartender for the Uptown Bar in Grand Forks, North Dakota. *Id.* at 4, 17. On February 16, 1966, Reese again applied for a disability annuity. The Board's district manager in Fargo, North Dakota, explained the last person service provisions of the Act to Reese, which provisions were in effect in 1966. *Id.* at 17, 21. These conditions mandated that Reese would not receive his annuity during any month in which Reese returned to work for the last employer for whom he had worked before he began receiving his annuity. *See* Railroad Retirement Act of 1937, 45 U.S.C. § 228b (1937), *amended by* Railroad Retirement Act of 1974, 45 U.S.C.

§§ 231–231v (1982 & Supp. V 1987). Reese told the district manager that he was totally and permanently disabled and that he was no longer going to work for anyone. *See* Admin. Record at 17. The district manager contacted the Uptown Bar in Grand Forks and discovered, however, that Reese was still employed there as a bartender. Thus, the district manager telephoned Reese about the false information that Reese had given to the Board. On April 20, 1966, Reese signed a new Form G–176a to certify that Reese had received a G–176 pamphlet explaining how employment would affect his disability annuity. Also, Reese certified that he understood that he had a duty to inform the Board when and where he worked, what type of work he was doing, and how much he earned. If Reese earned more than $100 per month, he had to notify the Board immediately of his higher earnings. *Id.* at 17–18. The disability annuity became effective on February 12, 1966. *Id.* at 4.

From 1968 to 1971, Reese continued to work part-time as a bartender. The Board sent policing forms to Reese and he reported for each month either that he was not working or that his monthly wages were less than $200.[1] *Id.* at 4, 35–38. If Reese earned more than $200, he was not entitled to that month's disability check. In 1972, the district office in Fargo discovered that Reese had failed to report earnings of more than $200 in the months from October of 1969 through June of 1972. *Id.* at 39–41. Because Reese earned over $200 per month and failed to report these wages, he received an overpayment of benefits. Reese returned the overpayment of $4,968.75, the amount of the annuity for each month that Reese exceeded the $200 limit. *Id.* at 44. Reese also paid a penalty of $141.95, which was equal to one month's disability annuity. *Id.* at 44–46.

From July through November of 1974, Reese again earned over $200 per month. The Board did not assess a penalty, however, because Reese reported these earnings. *Id.* at 47–48. Reese stopped work-

---

**1.** The monthly earnings limitation for railroad disability annuitants increased from $100 to $200. *See* Railroad Retirement Act, Pub.L. No. 90–257, Title II, § 201, 82 Stat. 23 (Feb. 15, 1968).

ing as a bartender in 1974, but he returned to work in 1977. *Id.* at 193–94. Again Reese earned over $200 per month, but he did not report it because he allegedly believed that he was entitled to earn up to the Social Security Administration's earnings maximum, which was higher than the Railroad Retirement Act's limit. *Id.* at 163–67.

On April 20, 1982, Reese applied for early Medicare entitlement, and indicated on the application form that he was presently employed. Reese signed a new Form G–176a, certifying that he understood that if he earned more that $200 per month, he was required to notify the Board and return any disability check during the month in which he exceeded the $200 limit. *Id.* at 55. During an investigation of Reese's application form, Reese's employer reported that Reese earned over $200 per month and, thus, Reese was subsequently denied benefits because he was able to perform substantial gainful activity. *Id.* at 4, 56–57. On November 19, 1982, Reese again terminated his part-time employment. *Id.* at 60.

On March 19, 1985, Reese received a notice of overpayment which informed him that he had been overpaid $5,555.78 in railroad retirement benefits. *Id.* at 5, 91–93. The notice indicated that Reese had exceeded his earnings maximum, and he should not have received annuity payments for three months in 1977, four months in 1978, six months in 1979, seven months in 1980, and seven months in 1981. *Id.* at 91. Reese did not receive a $4,152.25 annuity accrual due to him and, thus, the Board deducted this amount from the actual overpayment amount of over $9,000 to reach the $5,555.78 assessment. *Id.* at 13, 173–74. Also, because this was the second time that Reese had failed to report excess earnings, a penalty was imposed in the amount of $9,633.55, which was equal to the total amount of the annuities for the months that Reese should not have received payment. *Id.* at 92.

Reese requested a review of the facts, a personal conference, and a waiver consideration on April 11, 1985. In October of 1985, Robert Lehrke, a Board contact rep-

resentative, conducted a personal conference and subsequently recommended a denial of the waiver request. *Id.* at 94–99, 106–07. Reese appealed and the decision was affirmed on reconsideration in October of 1986. *Id.* at 5, 111. On December 10, 1986, Reese appealed to the Board's Bureau of Hearings and Appeals, and an appeals referee conducted a hearing on March 16, 1988. *Id.* at 113–117, 138. The referee found that even though Reese believed that he could earn up to the Social Security earnings limit without reporting his income to the Board, Reese exceeded the Social Security ceiling and still made no effort to contact the Board. *Id.* at 10, 66. The referee found that Reese had a history of poor compliance with Board regulations, despite numerous explanations of his obligations to report excess earnings. The referee found that Reese was at fault for not reporting and, thus, waiver under 45 U.S.C. § 231i(c) was not appropriate. *Id.* at 11, 13. The referee did determine, however, that Reese was without fault for $74.48 of the overpayment. Thus, the total overpayment due was $5,481.30 and not $5,555.78. *Id.* at 13. Further, the referee determined that assessment of the penalty was mandatory under 45 U.S.C. § 231a(e)(4). *Id.* at 13.

Reese appealed the referee's decision to the three-member Railroad Retirement Board, and on March 20, 1989, the Board affirmed the appeals referee's decision. *Id.* at 1–2. In this appeal, Reese raises four issues: (1) the penalty is in violation of the excessive fines clause of the eighth amendment; (2) the penalty is in violation of the due process clause of the fifth amendment; (3) Reese's medical bills should be deducted from his earnings in calculation of overpayments; and (4) the Board should be estopped from assessing a penalty.

## II. DISCUSSION

The eighth amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Reese argues that his penalty was excessive because his earnings

which exceeded the $200 monthly limit were small in comparison to his $9,633.55 penalty. For example, Reese points to the seven months of 1981 in which he earned more than $200.[2] During these seven months, Reese earned a total of $801.63 more than the earnings maximum. Yet, Reese was required to return his annuity for each month, amounting to $2,953.67, plus he was assessed a penalty equaling the amount of the overpayment of annuities, which also totaled $2,953.67. Thus, for earning an extra $801.63, Reese was required to pay $5,907.34.

We find that the excessive fines clause of the eighth amendment does not apply in this case. In *Browning–Ferris Indus. of Vt. v. Kelco Disposal, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 2913, 106 L.Ed.2d 219 (1989), the Supreme Court stated that "[g]iven that the [Eighth] Amendment is addressed to bail, fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." Accordingly, we do not find a violation of the eighth amendment in this case.

After carefully reviewing Reese's other arguments, we find that the Board's denial of his request for a waiver and the Board's imposition of a penalty should be affirmed. The Railroad Retirement Act provides that a disability annuitant who earns more than his monthly earnings limit must report to the Board any such payment of earnings before receiving and accepting the annuity for the following month. If an annuitant fails to report, a deduction shall be imposed "in an amount equal to the amount of the annuity for each month in which he is paid such earnings in

such employment." 45 U.S.C. § 231a(e)(4). While it may be argued that assessing a $9,633.55 penalty against Reese is like killing a fly with a sledgehammer, we note that the Board had no discretion under section 2(e)(4) as to the imposition of a penalty for failure to report excess earnings. The Board did not impose a penalty because Reese earned more than his limit. Rather, the Board imposed the penalty, as it was required to do, because Reese was at fault in failing to report his excess earnings. Reese was notified repeatedly that he had to report earnings over $200. Even if Reese mistakenly believed that he could earn up to the amount of the Social Security maximum without reporting to the Board, Reese still made no effort to report earnings that exceeded the higher Social Security limitation.

## III. CONCLUSION

For the reasons stated herein, we hold that the penalty imposed did not violate the excessive fines clause of the eighth amendment nor the due process clause of the fifth amendment. Further, we find no support for Reese's other arguments. Thus, we affirm the Board's decision. Accordingly, Reese must repay the amount he was overpaid and pay the penalty assessed pursuant to section 2(e)(4).

2. The seven month analysis is as follows:

| Year | Month | Earnings | Excess over $200 | Overpayment | Penalty |
|------|-------|----------|-------------------|-------------|---------|
| 1981 | Jan. | $321.75 | $121.75 | $408.87 | $408.87 |
| | Feb. | $285.75 | $ 85.75 | $408.87 | $408.87 |
| | March | $360.00 | $160.00 | $408.87 | $408.87 |
| | April | $288.00 | $ 88.00 | $408.87 | $408.87 |
| | May | $256.50 | $ 56.50 | $408.87 | $408.87 |
| | June | $380.25 | $180.25 | $454.66 | $454.66 |
| | July | $309.38 | $109.38 | $454.66 | $454.66 |
| TOTAL | | | $801.63 | $2,953.67 | $2,953.67 |

*See* Petitioner's brief at 7; Admin. Record at 63–64.